RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRACEY SHAW,

*Defendant-Appellant.*

No. 24-5461

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:22-cr-20269-1—Mark S. Norris Sr., District Judge.

Decided and Filed:  June 5, 2025

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Houston Goddard, GODDARD POPE PLLC, Nashville, Tennessee, for Appellant.
Naya Bedini, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

WHITE, J., delivered the opinion of the court in which GIBBONS, J., concurred, and
MURPHY, J., concurred in part and in the judgment.  MURPHY, J. (pp. 9–10), delivered a
separate concurring opinion.

_____

## OPINION

_____

HELENE N. WHITE, Circuit Judge.  Defendant-Appellant Tracey Shaw appeals the
written judgment issued by the district court after Shaw pleaded guilty to knowingly possessing a
firearm as a convicted felon.  Shaw argues that the written judgment conflicts with the district

court's oral pronouncement of his sentence. Because the written judgment clarifies the district court's ambiguous oral sentence, we AFFIRM.

## I. Facts

In January 2023, the government indicted Shaw on one count of knowingly possessing a gun as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Shaw pleaded guilty to that lone count. As part of the plea agreement, Shaw waived "his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as it is within the applicable guideline range, or lower, whatever the guideline range might be." R. 53, PID 71.

At the sentencing hearing, the district court determined that Shaw's Guidelines range was 87 to 108 months. The government asked for a 92-month sentence along with mandatory substance-abuse treatment, asserting that Shaw had an "unhealthy relationship with marijuana." R. 90, PID 343, 350–51. Shaw's counsel argued that such treatment was unnecessary because Shaw "doesn't have a drug problem" and "doesn't need drug rehabilitation." *Id.* at 363.

The district court sentenced Shaw to 92 months in prison and three years of supervised release. Addressing the parties' disagreement over substance-abuse treatment, the district court stated that it was "not going make a recommendation about substance abuse treatment" during Shaw's incarceration. *Id.* at 380. Rather, the court chose to "leave that to the Bureau of Prisons while [Shaw is] in custody." *Id.* Moving on to supervised release, the district court stated:

> I will include the condition on three years of supervised release, as directed by probation. They may decide he doesn't need it either. But if directed by the Office of Probation, that he participate in substance abuse treatment, in addition to, as directed, moral reconation therapy, vocational training and/or maintenance of full time employment, all as directed.

*Id.* After the sentencing hearing, the district court issued a written judgment, which stated: "The defendant shall participate in substance abuse testing and treatment as directed by the probation officer." R. 72, PID 152. Shaw timely appealed.

## II. Analysis

Shaw's sole argument is that the written judgment conflicts with the sentence the district court pronounced orally at the sentencing hearing. Specifically, Shaw reads the written judgment to impose "an unequivocal command that Shaw must participate in substance-abuse treatment" on supervised release. Appellant's Brief at 11. Shaw asserts that at the sentencing hearing, the district court effectively stated that the probation office would decide whether Shaw would participate in such treatment. Shaw thus asks us to "vacate the written judgment's mandatory substance-abuse treatment condition." *Id.* at 17.

The government has two responses. First, it argues that the sentencing appeal waiver in Shaw's plea agreement bars this appeal. Second, on the merits, it argues that the written judgment and the oral sentence are consistent—both clearly impose mandatory substance-abuse treatment on supervised release. And if there is any ambiguity in the oral sentence, the government argues, this court may use the written judgment to clarify the district court's intent. We address each argument in turn.

### A. Appeal Waiver

To start, the government argues that Shaw's appeal is barred by the appeal waiver in his plea agreement, in which Shaw waived "the right to appeal any sentence . . . so long as it is within the applicable guideline range." Appellee's Brief at 12 (quoting R. 53, PID 71). Shaw responds that when a defendant argues that the oral sentence conflicts with the written judgment, the defendant is challenging the *written judgment*, not the sentence itself.

We agree. "A criminal defendant has the right—rooted in the Fifth Amendment's Due Process Clause—to be present at his sentencing." *United States v. Hayden*, 102 F.4th 368, 371 (6th Cir. 2024). So the punishment announced from the bench in the defendant's presence "*is* the sentence." *United States v. Harris*, 51 F.4th 705, 720 (7th Cir. 2022) (emphasis added). The written judgment, on the other hand, "is merely evidence of the sentence." *United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008) (quoting *Sasser v. United States*, 352 F.2d 796, 797 (6th Cir. 1965)). Simply put, a sentencing court "may impose one and only one" sentence, and "the written judgment form is a nullity to the extent it conflicts with" the oral sentence. *United*

*States v. Booker*, 436 F.3d 238, 245 (D.C. Cir. 2006).[1]  Thus, when a defendant argues on appeal that the written judgment and oral sentence conflict, he is not challenging his *sentence*.  Rather, he is seeking to avoid enforcement of the written judgment, which is *not* the sentence and which may very well be a "nullity." *Id.*

The Fourth and Seventh Circuits have reached the same conclusion.  As the Fourth Circuit explained, if a defendant is "right on the merits" of his claim that the oral sentence conflicts with the written judgment, he is not "appeal[ling] the 'sentence' actually 'imposed' on him." *United States v. Singletary*, 984 F.3d 341, 345 (4th Cir. 2021) (quoting *United States v. Tancil*, 817 F. App'x 234, 236 (7th Cir. 2020)).  He is not, for example, "challeng[ing] the substantive or procedural reasonableness of his sentence." *Id.*  Rather, he is making "the 'more elementary contention' that certain conditions in his written judgment 'were not part of his sentence' at all." *Id.* at 345 (quoting *United States v. Rogers*, 961 F.3d 291, 295 (4th Cir. 2020)).  Similarly, the Seventh Circuit reasoned that because a defendant's "actual sentence" is the "oral pronouncement"—"not the written judgment"—a defendant asserting a conflict between the two is not "challenging the district court's sentence." *Harris*, 51 F.4th at 720 (quotation omitted).

Just so here.  Shaw asks us to "vacate *the written judgment's* mandatory substance-abuse treatment condition" because he believes that condition was not part of his actual sentence—i.e., it was not orally pronounced.  Appellant's Brief at 17 (emphasis added).  Thus, rather than appealing his sentence, Shaw is making the "more elementary contention" that the challenged condition is "not part of his sentence at all." *Singletary*, 984 F.3d at 345.

The government asserts that Shaw's argument is foreclosed by *United States v. Ferguson*, 669 F.3d 756 (6th Cir. 2012).  We disagree.  In *Ferguson*, the defendant challenged several "special conditions of supervised release imposed by the district court." *Id.* at 765.  The defendant argued that he "did not receive prior notice" of one of those conditions because "it was not listed in the plea agreement as one of the conditions that the Government was to propose to

---

[1]*See also*, *e.g.*, *United Stated v. Thomas*, 299 F.3d 150, 152 (2d Cir. 2002) ("It is the oral sentence which constitutes the judgment of the court . . . and the written judgment is nothing more than mere evidence of the sentence imposed orally in court by the judge." (cleaned up)); *United States v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc) ("[T]he purpose of the written order" is "to help clarify an ambiguous oral sentence by providing evidence of what was said from the bench.").

the court." *Id.* at 765–66. We held that this lack of notice was "immaterial" because in pleading guilty, the defendant had "acknowledged that . . . the sentencing recommendations in the plea agreement would not be binding on the district court." *Id.* at 766.

That holding has no relevance here. Ferguson did not argue that his oral sentence conflicted with the written judgment, much less that such an argument falls outside the scope of an appeal waiver. Indeed, it is unclear whether any such conflict even existed. The opinion states that the defendant lacked notice of the condition because it was omitted from the *plea agreement*; it says nothing about the condition being omitted from the oral sentence. Thus, the *Ferguson* panel did not "consider and consciously decide" whether a sentencing appeal waiver bars a defendant from arguing that the written judgment conflicts with the oral sentence. *Wright v. Spaulding*, 939 F.3d 695, 704 (6th Cir. 2019). "There was no 'application of the judicial mind' to that question, so there was no 'decision' about it." *Id.* (quoting *Carroll v. Carroll's Lessee*, 57 U.S. 275, 287 (1853)).

Nor are we persuaded by *United States v. Higgins*, in which the Fifth Circuit held that a sentencing appeal waiver bars the "contention that the written judgment conflicts with the oral pronouncement." 739 F.3d 733, 738 (5th Cir. 2014). The Fifth Circuit's contrary view rests entirely on the premise that the oral pronouncement and the written judgment "are *both* considered the sentence." *Id.* at 739 (emphasis added). Thus, "an appeal regarding a potential conflict between the two sentences is an appeal of the sentence." *Id.* But that reasoning "conflicts with the general rule that only a district court's oral pronouncement is the sentence, and any conflicting written judgment is a 'nullity.'" *Harris*, 51 F.4th at 720 (quoting *United States v. Medina-Mora*, 796 F.3d 698, 700 (7th Cir. 2015)). Indeed, we have long held that the written judgment is not a sentence itself; rather, it "is merely *evidence* of the sentence." *Sasser*, 352 F.3d at 797 (emphasis added). The Fifth Circuit's opinion does not address this established principle, so we decline to follow it.

Having decided that Shaw's argument is outside the scope of his appeal waiver, we address the merits.

## B.  Conflict Between the Written Judgment and Oral Sentence

Because a criminal defendant is constitutionally entitled "to be present at his sentencing," the "oral sentence controls" when it conflicts with the written judgment.  *Hayden*, 102 F.4th at 371.  But where the oral sentence is ambiguous, the written judgment "can be used to resolve" that ambiguity.  *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011).  Indeed, that is one of the very purposes of the written judgment: "to help clarify an ambiguous oral sentence by providing evidence of what was said from the bench."  *United States v. Brown*, 47 F. App'x 305, 315 (6th Cir. 2002) (quoting *United States v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc)).

Shaw argues that contrary to the sentence announced at the sentencing hearing, which effectively delegated the treatment decision to the probation office, the written judgment mandates substance-abuse treatment on supervised release.  However, as the parties acknowledge, the Constitution imposes certain limits on a sentencing court's authority to delegate drug-treatment decisions to probation officers.  Specifically, Article III vests courts with the exclusive authority to "impose punishment upon people convicted of crimes."  *United States v. Logins*, 503 F. App'x. 345, 349 (6th Cir. 2012) (citing *Ex parte United States*, 242 U.S. 27, 41 (1916)).  And the "conditions of . . . supervised release" are part of the criminal punishment constitutionally reserved to the judgment of the courts.  *United States v. Pruden*, 398 F.3d 241, 250–51 (3rd Cir. 2005).  Because probation officers are "non-judicial officers," they cannot constitutionally impose supervised-release conditions.  *Logins*, 503 F. App'x. at 349.

Shaw argues that because the oral sentence unambiguously made substance-abuse treatment subject to the probation department's determination that such treatment is appropriate, the written judgment must be vacated; and because the oral sentence involves an unconstitutional delegation, the matter must be remanded for the district court to decide whether to impose substance-abuse treatment as a mandatory condition of supervised release or remove any reference to it.

Article III does not, however, "prohibit courts from using nonjudicial officers to support judicial functions."  *United States v. Allen*, 312 F.3d 512, 515 (1st Cir. 2002) (quotation omitted).

Indeed, "courts cannot be expected to map out every detail of a defendant's supervised release," so "probation officers must be allowed some discretion in dealing with their charges." *Pruden*, 398 F.3d at 250. To "reconcile[] these two imperatives," *id.*, this circuit and several others have held that when a district court imposes a treatment program as a special condition of supervised release, the court must "decide whether such treatment is required." *United States v. Carpenter*, 702 F.3d 882, 885 (6th Cir. 2012) (quotation omitted).[2] A probation officer may then decide the "administrative details" of the court-ordered treatment. *Logins*, 503 F. App'x at 350–53. These include "how often and how many drug tests will be performed," *id.*, "how long [the defendant] must participate" in treatment, *Allen*, 312 F.3d at 515, and the "particular program" the defendant must join, *Pruden*, 398 F. 3d. at 251 n.5.

Applying these principles, we have held that it is constitutional for a sentencing court to order that a defendant "shall participate" in a drug-treatment program "*as* directed by the probation officer." *Carpenter*, 702 F.3d at 885 (emphasis added). That sentencing language, we reasoned, meets Article III's requirements because it mandates the defendant to "participate in a treatment program," while allowing the probation officer to handle "the details of the treatment." *Id.* (quotation omitted). However, ordering treatment "*if* directed" by a probation officer is "an impermissible delegation of judicial authority." *See, e.g.*, *United States v. Peterson,* 248 F.3d 79, 85 (2d Cir. 2001) (emphasis added).

Here, it is difficult to discern whether the district court at the sentencing hearing sought to impose treatment "as directed" or "if directed" by probation. At first, the district court stated it "will include the condition" during supervised release "*as* directed by" probation. R. 90, PID 380 (emphasis added). But in the very next sentence, the court said that probation "may decide he doesn't need it," and it used the phrase "*if* directed by the Office of Probation." *Id.* (emphasis added). Then the district court wavered once more—it listed substance-abuse treatment along with several other supervised release conditions and stated that "all" the conditions would be "*as* directed." *Id.* (emphasis added).

---

[2]*See also e.g.*, *United States v. Stephens*, 424 F.3d 876, 882 (9th Cir. 2005); *United States v. Kent*, 209 F.3d 1073, 1078–79 (8th Cir. 2000) (both similar).

Further complicating matters is the district court's contrasting drug treatment during incarceration, on one hand, and during supervised release, on the other. The district court stated that it would "not . . . make a recommendation about substance abuse treatment" during incarceration, but that it "*will* include the condition on three years of supervised release." *Id.* (emphasis added). So although the district court chose to "leave [Shaw's participation in carceral drug treatment] to the Bureau of Prisons," *id.*, it affirmatively imposed the condition on supervised release, albeit with some discretion placed with the probation office.

Ultimately, given the district court's lack of clarity at the sentencing hearing and alternating use of the terms "as directed" and "if directed," *id.*, we cannot say that "the oral sentence is clear." *Denny*, 653 F.3d at 421. Thus, we may consider the written judgment to "resolve an ambiguity." *Id.* Here, the written judgment states that Shaw "shall participate in substance abuse testing and treatment as directed by the probation officer." R. 72, PID 152. That language resolves the issue. This court has interpreted identical sentencing language to "clearly specif[y]" that treatment is required, leaving only "the details of the treatment" to the probation officer. *Carpenter*, 702 F.3d at 885–86; *Logins*, 503 F. App'x. at 349–53 (same). Here, considering the oral pronouncement of the sentence as clarified by the written judgment, we conclude that substance-abuse treatment is part of Shaw's sentence, with the treatment program, frequency, and duration of treatment to be decided by the probation office.

## III. Conclusion

For the foregoing reasons, we AFFIRM.

———————————

## CONCURRENCE

———————————

MURPHY, Circuit Judge, concurring in part and concurring in the judgment. Tracey Shaw seeks to invalidate the requirement that he participate in substance-abuse treatment while on supervised release. The district court's written judgment explained that Shaw must participate in this treatment "as directed by the probation officer." Judgment, R.72, PageID 152. At sentencing, however, the district court issued an ambiguous oral sentence that could be read in two different ways. Under the first reading, the court's oral sentence matched the written judgment because it required Shaw to participate in treatment and left only the administrative details to the probation office. Under the second reading, the court's oral sentence conflicted with the written judgment because it told the probation office to determine not just the details but also whether Shaw must participate at all. On appeal, Shaw advocates for the second reading and notes (correctly) that the oral sentence must trump the written one when the two conflict. *See United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011). But I agree with my colleagues that our precedent allows us to use the written judgment to resolve this ambiguity in the sentencing transcript. *See id.* And the judgment leaves no doubt that the court meant to require substance-abuse treatment. So the first reading of the transcript is correct. I would reject Shaw's appeal on this ground alone.

My colleagues, though, go further by answering a preliminary question: Did the appeal waiver in Shaw's plea agreement bar him from raising his claim that the written judgment conflicted with the sentencing transcript? I see no need to answer that question. To start, nothing requires us to decide it. Appeal waivers do not restrict our jurisdiction to resolve the merits of a defendant's appeal. *See United States v. Hack*, 999 F.3d 980, 983–84 (6th Cir. 2021). So if an appeal raises a thorny waiver question but an easy merits question, we may bypass the waiver issue by affirming on the merits. *See United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013).

This well-trodden path makes good sense here. For one thing, other courts have disagreed over whether similar appeal waivers barred similar challenges. Shaw's plea agreement waived his "right to appeal any *sentence* imposed by the Court" (with limited exceptions that do not matter here). Plea Agreement, R.53, PageID 71 (emphasis added). Does his appellate claim (that the written judgment conflicts with the oral sentence) challenge his "sentence" and so fall within this waiver? The Fifth Circuit has held that a similar challenge fell within a similar waiver, reasoning that the oral and written pronouncements both qualify as the sentence (even if the oral one trumps the written one in the event of a conflict). *See United States v. Higgins*, 739 F.3d 733, 737–39 (5th Cir. 2014). Yet the Fourth and Seventh Circuits have since disagreed. *See United States v. Harris*, 51 F.4th 705, 719–21 (7th Cir. 2022); *United States v. Singletary*, 984 F.3d 341, 345 (4th Cir. 2021). My colleagues agree with these latter two courts. But I would not enter the circuit split on this issue in a case where the outcome of the appeal does not even depend on it.

For another thing, Shaw challenges the written judgment in name only. *See United States v. Read*, 118 F.4th 1317, 1321–23 (11th Cir. 2024). Yes, he claims that the "oral sentence conflicts with the written sentence[.]" *Denny*, 653 F.3d at 421 (citation omitted). But he does not just seek the modest relief that this challenge would normally trigger: a mere clerical fix of the written judgment to match the oral sentence. *See Read*, 118 F.4th at 1322; *see, e.g.*, *United States v. Dean*, 657 F. App'x 503, 508 (6th Cir. 2016). To the contrary, he argues that his interpretation of the oral sentence—that the district court gave the probation office discretion to decide whether he should participate in substance-abuse treatment—would violate the law. Indeed, the government agrees. *See United States v. Carpenter*, 702 F.3d 882, 885 (6th Cir. 2012). So Shaw also asks us to remand so that the district court may reconsider its oral sentence (under his interpretation of it). In effect, then, he challenges the oral sentence too—not just the written judgment. *Cf. Read*, 118 F.4th at 1322. This fact makes this case an even worse vehicle to enter the circuit split.

All told, I would save the waiver issue for another day. Because my colleagues resolve it, I concur in their rejection of Shaw's claim on the merits and otherwise concur in the judgment.